UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

WESTCHESTER EXPORT CAPITAL, LLC,

                        Plaintiff,

            -against-

WI AUTOMOTIVE T.R.U.S.T., LEASE,
REGISTRATION, AND CONSULTING LLC d/b/a
TIMELESS AUTO GROUP WI, TEDMUND WAYNE
BLANKSCHEIN, ALBERT ("ALEX") GOLANT, and
51 AUTOMOBILES WITH VEHICLE
IDENTIFICATION NUMBERS
4JGDF6EE8HA860396, SALGS2VF9GA282962,
SALGS2VF9GA278927, SALGS2VF2GA276663,
4JGDF6EE7HA869736, 4JGDF6EE5HA858332,
SALGS2VF6GA279209, 4JGDF6EE9HA882679,
ZN661XUS0HX215634, ZN661XUL5HX237654,
ZN661XUS5HX234891, ZN661XUL3HX237653,
ZN661XUL1HX237652, 4JGDF6EE2HA895533,
4JGDF6EE0HA914709, 4JGDF6EE1HA922656,
4JGDF6EE9HA913574, 4JGDF6EE9HA928186,
ZN661YUS1HX236093, 4JGDF6EE8HA930690,
ZN661YUS9HX237265, ZN661YUS4HX230577,
ZN661YUS3HX234961, 4JGDF6EE3HA928684,
4JGDF6EE5HA927889, 4JGDF6EE0HA932286,
4JGDF6EE6HA927707, 4JGDF6EE6HA930512,
4JGDF6EEXHA832747, 4JGDF6EE6HA934804,
4JGDF6EE9HA933808, SALGS2FV0HA335412,
ZAM56RRA1H1206160, ZAM56RRA5H1206159,
ZAM56RRA6H1217347, ZAM56RRA8H1238135,
4JGDF6EEXHA945417, 4JGDF6EE5HA935300,
4JGDF6EE2HA944262, 4JGDF6EE4HA923655,
ZAM56RRA9H1199104, ZAM56RRA2H1199154,
ZAM56RRAXH1213687, ZAM56RRA4H1199155,
ZAM56RRA0H1199105, ZAM56RRA7H1199151,
ZAM56RRAXH1204276, ZAM56RRA9H1199152,
ZAM56RRA7H1199148, ZAM56RRA6H1199108, and
ZAM56RRA3H1204278,

                        Defendants.

------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

17 Civ. 03368 (CS)(JCM)

No objections to this Report and
Recommendation (the "R&R") have been filed.
Accordingly, I review it for clear error.
Finding no error, clear or otherwise, I hereby
adopt the R&R as the decision of the Court.
The Clerk of Court is respectfully directed to
enter judgment as recommended in the R&R.
Plaintiff's counsel should advise by letter, no
later than 2/6/19, whether the Court can close
the case or whether additional proceedings are
necessary (and if so, what they are).

SO ORDERED.

_Cathy Seibel_
CATHY SEIBEL, U.S.D.J.

1/30/19

1

To the Honorable Cathy Seibel, United States District Judge:

Plaintiff Westchester Export Capital LLC ("Plaintiff") commenced this action on May 5, 2017 against defendants WI Automotive T.R.U.S.T., Lease, Registration, and Consulting LLC d/b/a/ Timeless Auto Group WI ("Timeless"), Tedmund Wayne Blankschein ("Mr. Blankschein"), Albert Golant ("Mr. Golant"), and 51[1] automobiles with the vehicle identification numbers listed in the above caption (the "Subject Automobiles" and, together with Timeless, Mr. Blankschein and Mr. Golant "Defendants"). (Docket No. 1).  This action arises out of agreements pursuant to which Plaintiff advanced funds to Timeless to finance the purchase of vehicles for export. (*Id.*).  On February 21, 2018, the Court entered a default judgment against Defendants and referred the matter to the undersigned to conduct an inquest into damages. (Docket Nos. 35, 36).  For the reasons below, I respectfully recommend an entry of judgment awarding Plaintiff (1) $4,775,466.00 against Timeless, Mr. Blankschein, and Mr. Golant, jointly and severally; (2) prejudgment interest at the rate of 2% per month on the $4,775,466.00 award against Timeless and Mr. Blankschein, commencing on May 4, 2017, jointly and severally; and (3) $92,967.67 in legal fees and expenses against Timeless and Mr. Blankschein, jointly and severally.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff commenced this action by filing its complaint ("Complaint" or "Compl.") on May 5, 2017. (Docket No. 1).  Plaintiff asserted claims for (1) breach of contract against

---

[1] Plaintiff voluntarily dismissed its claims against 17 vehicles with the following vehicle identification numbers: 4JGDF6EE6HA934804, 4JGDF6EE4HA923655, SALGS2VF6GA279209, ZN661XUSOHX215634, ZN661XUS5HX234891, ZAM56RRA9H1199104, ZAM56RRA2H1199154, ZAM56RRAOH1199105, ZAM56RRA4H119915S, ZAM56RRAXH1213687, ZAM56RRA7H1199151, ZAM56RRAXH1204276, ZAM56RRA9H1199152, ZAM56RRA7H1199148, ZAM56RRA6H1199108 ZAM56RRA3H1204278 and ZAM56RRA6H121734. (Docket Nos. 28, 30).

Timeless and Mr. Blankschein; (2) conversion against Mr. Golant; (3) repossession and foreclosure against the Subject Automobiles; and (4) attorneys' fees against Timeless and Mr. Blankschein. (*Id.* ¶¶ 51-67).  On May 5, 2017, the Court issued an Order to Show Cause directing Defendants to show cause as to why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendants from selling, transferring, encumbering, and/or otherwise disposing of the Subject Automobiles or any other asset Plaintiff possessed a security interest in. (Docket No. 12).  Timeless and Mr. Blankschein consented to the preliminary injunction, and on May 17, 2017, the Court entered a consent order granting Plaintiff's motion for a preliminary injunction preventing Defendants from transferring or disposing of any assets of Timeless, including the Subject Automobiles. (Docket No. 18).  Mr. Golant did not file or serve any opposition.

Defendants never answered or responded to Plaintiff's complaint.  On January 17, 2018, the Court issued an Order to Show Cause directing Defendants to show cause on February 13, 2018 why a default judgment should not be granted against them. (Docket No. 33).  After Defendants failed to appear at the show cause hearing, the Court issued a default judgment as to Defendants' liability. (Docket No. 36).  The Court referred the matter to the undersigned to conduct an inquest. (Docket No. 35).  Plaintiff filed declarations in support of its claim for damages on April 24, 2018, including the Declaration of Kathy S. Marks ("4/24/18 Marks Dec."), (Docket No. 42), with accompanying exhibits, and the Declaration of Charles S. Brofman ("Brofman Dec."), (Docket No. 43).  On November 27, 2018 and December 10, 2018, Plaintiff submitted supplemental declarations of Kathy S. Marks and exhibits in support of its request for attorneys' fees and costs.[2] (Docket Nos. 46, 48).  The Court held a hearing on

---

[2] The declaration of Kathy S. Marks, dated November 27, 2018 is hereinafter referred to as "11/27/18 Marks Dec." and the declaration, dated December 10, 2018, is hereinafter referred to as "12/10/18 Marks Dec."

damages relating to Plaintiff's claim for conversion on December 5, 2018.  Defendants have not submitted a response regarding their default or the damages inquest.  Additionally, Defendants did not appear at the December 5, 2018 hearing.

**B. Factual Background**

Given Defendants' default, the well-pleaded allegations contained in Plaintiff's Complaint are deemed to be true, except for those relating to damages. *See Ortega v. JR Primos 2 Rest. Corp.*, No. 15 Civ. 9183 (JCF), 2017 WL 2634172, at \*2 (S.D.N.Y. June 16, 2017).  The facts summarized below are taken from the Complaint, the declarations and accompanying exhibits submitted by Plaintiff in support of its request for damages, and testimony and exhibits from the damages hearing.

Plaintiff is a Delaware corporation with its principal place of business in White Plains, New York. (Compl. ¶ 5).  Plaintiff provides financing to companies in the vehicle export business. (*Id.* ¶ 15).  Defendant Timeless is a Wisconsin corporation in the business of acquiring vehicles in the United States and exporting them to foreign buyers. (*Id.* ¶¶ 6, 14).  Defendant Tedmund Blankschein is the President and sole owner of Timeless, and defendant Albert Golant served as the General Manager of Timeless. (*Id.* ¶¶ 8, 10, 20; Tr.[3] at 8).  This action arises out of Timeless's breach of a credit and security agreement between Plaintiff and Timeless and Mr. Golant's unlawful conversion of the collateral pledged under the security agreement.

**1. The Agreements**

On September 15, 2016, Plaintiff and Timeless entered into a Vehicle Acquisition Line of Credit Agreement (the "LC Agreement"), under which Plaintiff advanced Timeless $3 million for the purchase of vehicles for export. (Compl. ¶¶ 16-17).  Plaintiff and Timeless subsequently

---

[3] Refers to the transcript of the damages hearing held on December 5, 2018.

agreed to increase the cumulative advance limit to $5 million. (*Id.* ¶ 18).  To date, Plaintiff has advanced Timeless a total of $4,775,466.00 pursuant to the LC Agreement.[4] (Pl. Ex.[5] 6). Timeless granted Plaintiff a security interest in the vehicles it purchased using the advances made under the LC Agreement. (LC Agreement § 11).  To that end, Plaintiff and Timeless simultaneously executed a security agreement, dated September 15, 2016 (the "Security Agreement"), which requires Timeless to, among other things, deliver the collateral to Plaintiff in the event Timeless defaults on its obligations under the LC Agreement. (Security Agreement § 6).  Plaintiff perfected its security interest by filing a financing statement with the Wisconsin Department of Financial Institutions on September 20, 2016. (Compl. ¶ 30).  Mr. Blankschein also provided Plaintiff with a guaranty, dated September 15, 2016 (the "Guaranty").  Pursuant to the Guaranty, Mr. Blankschein is jointly and severally liable for all of Timeless's obligations and indebtedness under the LC Agreement. (Guaranty ¶ 1).

The LC Agreement provides that Plaintiff "shall provide [Timeless] with a monthly statement of Advances, interest accruals, [Plaintiff] expenses and payments of Interest and principal within seven (7) Business Days after the end of the month." (LC Agreement § 3). Within two days of receiving the monthly statement, Timeless was required to pay Plaintiff the stated interest and expenses. (*Id.*).  Timeless's failure to make a payment when due amounts to an event of default under the LC Agreement (an "Event of Default"), which accelerates

---

[4] There is a discrepancy in the evidence submitted by Plaintiff concerning how much money it advanced Timeless for the purchase of the Subject Automobiles pursuant to the LC Agreement.  Mr. Brofman's declaration in support of Plaintiff's request for damages indicates that Plaintiff advanced $4,779,850.00. (Brofman Dec. ¶ 6).  However, a spreadsheet created by Plaintiff and submitted in support of its claim for damages against Defendants states that Plaintiff funded $4,775,466.00 for the Subject Automobiles pursuant to the LC Agreement. (Pl. Ex. 6).  Plaintiff's Exhibit 6 identifies each Subject Automobile by vehicle identification number and the corresponding funding amount, and Mr. Brofman testified at the hearing that it represented the damages sought against Defendants.  (Pl. Ex. 6; Tr. 27).  Accordingly, the Court will use the figure identified in Plaintiff's Exhibit 6 for the purpose of damages calculations.

[5] Refers to the exhibit entered into evidence by Plaintiff at the December 5, 2018 damages hearing.

5

Timeless's obligations under the LC agreement and renders all of its outstanding indebtedness to

Plaintiff immediately due and payable. (LC Agreement §§ 15.3.1, 15.3.2).  Specifically, the LC

Agreement states:

> 15.3.1 An **"Event of Default"** shall be deemed to have occurred hereunder if Client either (A) fails to make any payment due WEC hereunder on the due date thereof, or (B) fails in any respect to perform or defaults in any of its other obligations hereunder or in any other agreement with WEC or any affiliate, parent, or subsidiary of WEC, and such failure continues unremedied for a period of five (5) Business Days following notice thereof to Client, or (C) has made a representation which proves to be false or breaches a warranty made hereunder, or (D) files (or has filed against it) a petition (or otherwise initiates proceedings) for bankruptcy, reorganization, receivership or other proceedings for the protection of debtors, or (E) fails to make any payment due to any third party on or before the due date therefor if the failure to make such payment gives rise to or creates (or if unremedied would give rise to or create) an encumbrance upon a Vehicle or any of them or otherwise restricts the sale or disposition of a Vehicle or any of them; or (F) commits any other material breach of this Agreement.

> 15.3.2. Upon the occurrence of any Event of Default, WEC's obligation to perform under this Agreement shall be terminated and Client shall be liable for immediate payment to WEC of the Indebtedness due to WEC as set forth in this Agreement, including in the Indebtedness reimbursement to WEC for all of its reasonable costs of collection, whether or not an arbitration or other enforcement action has been filed or taken, or judgment entered, including, without limitation, reasonable attorneys' fees and legal expenses. All amounts owed to WEC pursuant to this Section 15.3.2 shall carry interest at the rate of 2% per month, from the effective date of termination of this Agreement, or, in the case of WEC's costs of collection, from the date such costs are incurred.[6]

(LC Agreement §§ 15.3.1, 15.3.2).

The LC Agreement requires Timeless to store vehicles that it acquires with

advances from Plaintiff at pre-approved warehouses. (LC Agreement §§ 1.28, 8.5).  The

LC Agreement further requires that all vehicles purchased must be acquired and titled in

Timeless's name unless approved in writing by Plaintiff in advance. (*Id.* § 8.3).

---

[6] "Indebtedness" is defined under the LC Agreement as "the total of all Advances made by [Plaintiff] which have not been repaid plus all unpaid Interest and any of [Plaintiff] Expenses that may be due from [Timeless] to [Plaintiff] . . ." (LC Agreement § 1.17).

**2. Timeless's Defaults Under the LC Agreement**

On May 2, 2017, Plaintiff provided Timeless with its monthly statement for April 2017, which stated interest and expenses in the amount of $85,249.68. (Compl. ¶¶ 38-39).  Under Section 3 of the LC Agreement, Timeless was obligated to pay the interest and expenses on or before May 4, 2017. (LC Agreement § 3).  Timeless failed to make a payment. (Compl. ¶ 40).  Timeless's failure to make a payment by May 4, 2017 constituted an Event of Default, entitling Plaintiff to accelerate Timeless's obligations under the LC Agreement and repossess the collateral. (LC Agreement §§ 15.3.1, 15.3.2; Security Agreement § 6).

Plaintiff alleges that Timeless also defaulted by (i) allowing vehicles to be titled in the names of corporations other than Timeless, (ii) storing vehicles in warehouses not approved by Plaintiff; and (iii) failing to deposit letters of credit received for the purchase of vehicles in the collection account prescribed by the LC Agreement. (Compl. ¶ 42).

**3. Mr. Golant's Disappearance**

On or about May 4, 2017, Plaintiff learned that Mr. Golant, Timeless's General Manager, had gone missing several weeks earlier. (Compl. ¶ 43).  Mr. Blankschein informed Plaintiff that Mr. Golant's family and coworkers did not know his whereabouts and that he had not responded to Mr. Blankschein's and Timeless's repeated attempts to contact him. (*Id.* ¶ 44).  Plaintiff learned of Mr. Golant's "self-professed gambling addiction," Mr. Golant's debt of approximately $1.5 million, and the federal government's investigation into allegations of Mr. Golant's money laundering and tax evasion. (*Id.* ¶¶ 45-46).  Plaintiff alleges that Mr. Golant absconded with the Subject Automobiles and an undetermined amount of cash from Timeless and stored the Subject Automobiles in unauthorized warehouses in California under the name of unapproved entities. (*Id.* ¶¶ 47-50).

At the damages hearing, Charles Brofman, Plaintiff's CEO, testified that Mr. Golant had access to all of Timeless's bank accounts and handled Timeless's day-to-day operations, including managing the purchase and sale of vehicles and the funds Plaintiff advanced to Timeless for that purpose. (Tr. at 8-9, 19).  Mr. Golant disappeared with the Subject Automobiles as well as the funds Plaintiff advanced to Timeless that had not yet been repaid. (Brofman Dec. ¶ 5; Tr. 16-19).  Mr. Brofman presented evidence that based upon the purchase price of the Subject Automobiles the total value of the stolen property was $4,775,466.00. (Tr. 27, 35; Pl. Ex. 6).

## II. LEGAL STANDARDS

In assessing damages upon entry of default, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  Plaintiff has the burden of proving its entitlement to the recovery of damages and must rely only on admissible evidence. *See Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 500 (S.D.N.Y. 2013).  Additionally, to ensure that a defaulting party has notice of the type of relief sought, Rule 54(c) of the Federal Rules of Civil Procedure ("Rule 54") requires that the "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *Silge v. Merz*, 510 F.3d 157, 161 (2d Cir. 2007).  However, Rule 54 "does not require plaintiff to have demanded a sum certain in order to recover on default." *Ames v. Stat Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005).

"Calculating the appropriate amount of damages is a two-step process: (1) determining the proper rule for calculating damages on . . . a claim; and (2) assessing plaintiff's evidence supporting the damages to be determined under this rule." *Norcia*, 980 F. Supp. 2d at 500

(alteration in original) (quotation marks and citation omitted).  Where a federal court exercises diversity jurisdiction, state law provides the proper rule for calculating damages. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 437 (1996).

## III. DISCUSSION

Federal Rule of Civil Procedure 54(c) limits Plaintiff's recovery upon a default judgment to the relief sought in its pleadings.  In this case, Plaintiff sought damages due under the LC Agreement against Timeless and Mr. Blankschein, including the principal amount due, interest and legal fees and expenses. (Compl. ¶¶ 57, 65-67; Prayer for Relief).  On its claim for conversion against Mr. Golant, Plaintiff sought "damages from Golant in the amount of the full value of the Subject Automobiles." (*Id.* ¶ 61).

### A.  Breach of Contract Against Timeless and Mr. Blankschein

### 1.  Applicable Law

In diversity cases, federal courts look to the choice of law principles of the forum state – in this case, New York – to determine which state's substantive law applies to Plaintiff's claims. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996).  "New York law gives full effect to parties' choice-of-law provisions." *Gen. Elec. Co. v. Varig-S.A.*, No. 01 Civ. 11600 (RJH)(JCF), 2004 WL 253320, at *3 (S.D.N.Y. Feb. 10, 2004) (internal quotation marks omitted).  Here, the choice of law provisions in the parties' agreements provide that the parties' rights under the agreements shall be enforced according to New York law. (*See* LC Agreement § 17.1; Guaranty Agreement ¶ 7; Security Agreement § 7.3).

### 2.  Amount of Damages

Under New York law, a non-breaching party may recover damages that "are the natural and probable consequence of the breach" of a contract. *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 805 (2014) (citation and internal quotation marks omitted).  This

includes "money that the breaching party agreed to pay under the contract . . ." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) (citing *Am. List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 44 (1989)).  In this case, Plaintiff seeks three categories of damages under the LC Agreement: principal that remains due, legal fees and expenses, and interest. (Brofman Dec. ¶ 11).  The Court addresses each category of damages in turn.

### i.  Principal Amount Due

Plaintiff seeks the principal that Plaintiff advanced to Timeless pursuant to the LC Agreement that remains due and owing to Plaintiff. (Brofman Dec. ¶¶ 6, 10).

Upon any Event of Default, the LC Agreement requires Timeless to immediately pay Plaintiff for all advances made by Plaintiff pursuant to the LC Agreement. (LC Agreement §§ 1.17; 15.3.2).  At the damages hearing, Mr. Brofman submitted records showing that Plaintiff advanced Timeless $4,775,466.00 for the Subject Automobiles and testified that Plaintiff had not been repaid for that amount. (Tr. 27; Pl. Ex. 6).  Although Plaintiff recovered 29 vehicles, it could only sell 10 of them for a total $165,467.63. (Brofman Dec. ¶ 9).  According to Mr. Brofman, Plaintiff was required to pay $173,679.87 to satisfy liens on some of the vehicles, and therefore, Plaintiff has been unable to recoup any of its losses. (*Id.*).

The Court recommends awarding Plaintiff the unpaid principal amount due under the LC Agreement, totaling $4,775,466.00, against defendants Timeless and Mr. Blankschein, jointly and severally.

### ii.  Legal Fees and Expenses

Plaintiff seeks $92,967.67 in legal fees and expenses incurred in connection with the instant enforcement action and with repossessing the collateral vehicles. (12/10/18 Marks Dec. ¶

4).  Plaintiff argues that Section 15.3.2 of the LC Agreement authorizes Plaintiff's recovery of its costs and expenses, including legal expenses and reasonable attorneys' fees. (Brofman Dec. ¶ 8).

The LC Agreement obligates Timeless to pay Plaintiff for "all of its reasonable costs of collection, whether or not an arbitration or other enforcement action has been filed or taken, or judgment entered, including, without limitation, reasonable attorneys' fees and legal expenses." (LC Agreement § 15.3.2).  The Security Agreement similarly requires Timeless to "pay upon demand all of [Plaintiff's] costs and expenses, including reasonable attorneys' fees and [Plaintiff's] legal expenses, incurred in connection with the enforcement of this [Security Agreement], the LOC [LC] Agreement and the Related Documents." (Security Agreement § 7.6).  Mr. Blankschein guaranteed all of Timeless's obligations under the LC Agreement, including Timeless's obligation to pay reasonable attorneys' fees and legal expenses. (Guaranty ¶ 5).

Plaintiff, as the fee applicant, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Nautilus Neurosciences, Inc. v. Fares*, No. 13 Civ. 1078 (SAS), 2014 WL 1492481, at *1 (S.D.N.Y. Apr. 16, 2014) (citation and internal quotation marks omitted).  Plaintiff is required to support its request for attorneys' fees with "contemporaneous time records that '[specify], for each attorney, the date, the hours expended, and the nature of the work done.'" *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 739 (S.D.N.Y. 2018) (quoting *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014)); *see also Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("[C]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit.") (citation omitted); *Kottwitz v. Colvin*, 114 F. Supp. 3d 145, 150 (S.D.N.Y. 2015) ("The law in this circuit

is that no award for attorneys' fees is appropriate where the attorney failed to maintain contemporaneous time records.").

The Court "retains discretion to determine . . . what constitutes a reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation and internal quotation marks omitted). The Second Circuit has held that "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). However, "there is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (citation and internal quotation marks omitted).

Plaintiff seeks $91,330.00 in attorneys' fees based on the following hourly rates for the following hours expended by its attorneys and paralegals:

| Name | Position | Hourly Rate | Hours | Total |
| --- | --- | --- | --- | --- |
| Kathy S. Marks | Partner | $475 | 138.3 | $65,692.50 |
| Russell M. Yankwitt | Partner | $575 | 7.4 | $4,255.00 |
| Dina L. Hamerman | Partner | $475 | 0.4 | $190.00 |
| Sarah A. Sulkowski | Counsel | $475 | 39.9 | $18,952.50 |
| Craig M. Cepler | Counsel | $475 | 2.9 | $1,377.50 |
| Sharon Terry | Paralegal | $125 | 2.1 | $262.50 |
| Kristen McAlley | Paralegal | $125 | 0.8 | $100.00 |
| Shannon Fulmer | Paralegal | $125 | 4 | $500.00 |
| Total | | | | $91,330.00 |

(11/27/18 Marks Dec. ¶ 4; 12/10/18 Marks Dec. ¶ 3).

The Court first addresses the reasonableness of the hourly rates charged. A reasonable hourly rate must be in line with the rates "prevailing in the community for similar services of

lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation and internal quotation marks omitted); *see also Rosado v. City of N.Y.*, No. 11-cv-4285 (SAS), 2012 WL 955510, at *4 (S.D.N.Y. Mar. 15, 2012) ("The relevant community to which the court should look is the district in which the case was brought.") (citation and internal quotation marks omitted).  "The 'court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district' and 'on evidence proffered by the parties.'" *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 338 (S.D.N.Y. 2016) (citation omitted).

Plaintiff submitted the credentials and experience of the attorneys and paralegals working on the matter in support of its application for attorneys' fees. (11/27/18 Marks Dec. ¶¶ 5-10). Every attorney working on the case had over ten years of experience.  The Court recommends finding that the hourly rates charged are commensurate with rates charged for similar services by attorneys and paralegals in this district with reasonably comparable experience, skill and reputation. (11/27/18 Marks Dec. ¶¶ 11-12). *See also Genger v. Genger*, No. 14-cv-05683 (KBF)(DF), 2017 WL 9771814, at *4 (S.D.N.Y. May 22, 2017) (up to $615 per hour for partner, up to $395 per hour for associates, and up to $280 per hour for paralegals were reasonable hourly rates in contractual dispute); *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588-89 (S.D.N.Y. 2018) (approving hourly rate of $765 for partner and hourly rates for $325 to $450 for associates).

The Court next addresses the reasonableness of the hours expended.  This case was staffed with five attorneys – three partners and two counsel – and three paralegals. (11/27/18 Marks Dec. ¶ 4).  The requested fees relate not only to the hours expended in the prosecution of

this lawsuit, but also to Plaintiff's efforts to collect the collateral.  While the case was staffed with more than one attorney, the vast majority of the work was handled by Kathy Marks, the case's lead litigator, who billed 138.3 hours on the case.  The Court finds no evidence that the work performed by the additional attorneys was duplicative.  Having reviewed the contemporaneous time records, the Court recommends finding that the amount of time expended was reasonable.

Finally, the Court turns to Plaintiff's request for $1,637.67 in costs.  Plaintiff can recover "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989).  Plaintiff seeks $613.21 for service of process expenses, $400.00 for filing fees, $602.16 for postage and Federal Express, and $22.30 for PACER expenses.  The Court finds these costs reasonable. *See Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*, 483 Fed. Appx. 599, 605 (2d Cir. 2012) (postage, electronic legal research and photocopying costs were "'the sort of expenses that may ordinarily be recovered' as part of a fee award.") (citation omitted); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for filing fees and Federal Express costs); *Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *12 (S.D.N.Y. Sept. 4, 2014) (reimbursing plaintiffs for "the cost of online research, making copies, and ordering transcripts"); *Bhungalia*, 317 F. Supp. 3d at 745 ("Costs for shipping, filing fees, process servers, and litigation support are recoverable.").

Accordingly, the Court recommends awarding $92,967.67 in total for attorneys' fees and costs, representing $91,330.00 in fees and $1,637.67 in costs.

### iii.  Interest

Plaintiff argues that it is entitled to recover interest at the rate of 2% per month, beginning from May 4, 2017, the date of Timeless's default. (Brofman Dec. ¶ 7).

14

Under New York law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *United States Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991).  New York's statutory rate of interest recovered "upon a sum awarded because of a breach of performance of a contract" is typically nine percent per annum. N.Y. C.P.L.R. §§ 5001(a), 5004.  However, "[i]f the contract provides a rate at which interest is to be calculated, then the contractual rate, rather than the statutory rate of nine percent per year as set forth in [C.P.L.R. § 5004], governs." *Day Inns Worldwide, Inc. v. Hospitality Corp. of the Carolinas*, No. 13-CV-8941 (JPO), 2015 WL 5333847, at *5 (S.D.N.Y. Sept. 14, 2015) (citation and internal quotation marks omitted).

In this case, Section 15.3.2 of the LC Agreement provides that, upon default, "[a]ll amounts owed to [Plaintiff] pursuant to this Section 15.3.2 shall carry interest at the rate of 2% per month, from the effective date of termination of this Agreement, or, in the case of [Plaintiff]'s costs of collection, from the date such costs are incurred." (LC Agreement § 15.3.2). The LC Agreement further specifies that Plaintiff's obligations under the LC Agreement "terminate" upon Timeless's default, which in this case was May 4, 2017.  At 2% per month, or 24% per annum, the contractual interest rate for Timeless's defaulted obligations is enforceable as it is just below the 25% criminal usury cap. *See Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 146 (S.D.N.Y. 2017) (interest rates on defaulted obligations that exceed 25% per annum are unenforceable).

Based on the enforceable terms of the contract, the Court recommends applying an interest rate of 2% per month to the $4,775,466.00 award against Timeless and Mr. Blankschein, jointly and severally, running from May 4, 2017.[7]

---

[7] Plaintiff did not plead or ask for interest on the award of attorneys' fees and costs.

**B.  Conversion against Mr. Golant**

**1.  Applicable Law**

Plaintiff is a Delaware corporation with its principal place of business in New York. (Compl. ¶ 5).  Mr. Golant and Timeless, which Mr. Golant worked for, are domiciled in Wisconsin. (*Id.* ¶¶ 6, 9).  Plaintiff alleges that Mr. Golant absconded with the Subject Automobiles and stored them in California. (*Id.* ¶ 11).  In tort actions, New York applies an "interest analysis" to choice-of-law questions. *Comer v. Titan Tool, Inc.*, 888 F. Supp. 605, 608 (S.D.N.Y. 1995) (citing *Babcock v. Jackson*, 12 N.Y.2d 473, 484 (1963)).   Interest analysis is a fact intensive "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (citation and internal quotation marks omitted).  Plaintiff argues that New York law should apply to Plaintiff's conversion claim because Plaintiff suffered its injury in New York, all funds came from New York, and the dealings between the parties occurred in New York. (Tr. at 3).  Because Plaintiff's principal place of business is in New York, the parties conducted business in New York, and the law of New York bears a reasonable relation to the transactions at issue, the Court will apply New York law to the conversion claim.

**2.  Conversion Damages**

Under New York law, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006).  In New York, "a plaintiff must plead the following in order to assert a claim of conversion: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or

control over the property before its conversion; and (3) defendant exercised an unauthorized

dominion over the thing in question, to the alteration of its condition or to the exclusion of the

plaintiff's rights.'" *E-Global Alliances, LLC v. Anderson et al.*, No. 10 Civ. 2844 (KMK)(PED),

2011 WL 8879268, at *10 (S.D.N.Y. May 11, 2011), *adopted by* No. 10 Civ. 2844

(KMK)(PED), 2012 WL 3656042 (S.D.N.Y. Aug. 25, 2012) (citation omitted).  "[D]amages

recoverable for the conversion of property are limited to the value of the property at the time of

the conversion." *Caballero v. Anselmo*, 759 F. Supp. 144, 148 (S.D.N.Y. 1991).

        "However, even if a plaintiff meets all of the elements of a conversion claim, the claim

will still be dismissed if it is duplicative of a breach of contract claim." *AD Rendon Commc'ns,*

*Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y.

Oct. 10, 2007).  "In determining whether a conversion claim is duplicative of a breach of

contract claim, courts look both to the material facts upon which each claim is based and to the

alleged injuries for which damages are sought." *Id.* at *5.  A conversion claim is duplicative of a

contract claim if it is based on the same facts underlying a contract claim. *See Reade v. SL Green*

*Operating P'ship*, 817 N.Y.S.2d 230, 231 (1st Dep't 2006).  Moreover, "a conversion claim 'will

be deemed redundant when damages are merely being sought for breach of contract.'" *AD*

*Rendon Commc'ns*, 2007 WL 2962591, at *5 (quoting *Rolls-Royce Motor Cars, Inc. v.*

*Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996)).

        In this case, Plaintiff seeks the value of the property converted by Mr. Golant, a non-

signatory to the LC Agreement, in the amount of $4,775,466.00. (Tr. 35; Pl. Ex. 6).  Mr.

Brofman testified that when Plaintiff fulfilled funding requests it lent against letters of credit

obtained by potential purchasers as well as the value the Subject Automobiles. (Tr. 7-9).  Thus,

17

Plaintiff maintains that the amount funded for the Subject Automobiles adequately represents the value of the Subject Automobiles. (*Id.*).

In support of its calculations for the value of the converted property, Plaintiff relies upon a spreadsheet assembled by Plaintiff and its insurance counsel that shows for each Subject Automobile alleged to be converted: (1) the vehicle identification number, (2) the year, make and model, (3) the funding date, (4) the wired amount, (5) the insured amount, (6) the purchaser, (7) the dealer, (8) the dealer location, (9) the last known location of the Subject Automobile, and (10) the disposition. (Pl. Ex. 6). Mr. Brofman further attested that Mr. Golant disappeared with the Subject Automobiles as well as the funds provided by Plaintiff. (Tr. 8, 18-19, 27, 35). According to Mr. Brofman, he learned that thirteen of the Subject Automobiles were never purchased even though Plaintiff received buyers' orders from the dealerships and advanced the requested funds. (Tr. 30). Plaintiff has not recovered the funds it advanced for the thirteen unpurchased Subject Automobiles. (Tr. 35-36). Mr. Brofman testified that Plaintiff holds a security interest in proceeds from the letters of credit as well as the underlying Subject Automobiles. (Tr. 8; *see also* Security Agreement). Based on the testimony and evidence presented at the damages hearing, the Court finds that Plaintiff has demonstrated its conversion damages with sufficient certainty.

Additionally, the conversion claim is not duplicative of the breach of contract claim because Mr. Golant is not a signatory to the LC Agreement or the Security Agreement and is not bound by those agreements. *See Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, No. 10-CV-1762(RER), 2013 WL 696651, at *5 (E.D.N.Y. Feb. 26, 2013) (conversion claim against non-signatories was independent of the contract claim). Moreover, Plaintiff has alleged separate factual allegations of wrongful conduct sufficient to state a distinct conversion claim against Mr.

Golant. For example, the challenged misconduct in Plaintiff's conversion claim is Golant's theft and unlawful dominion over the Subject Automobiles rather than a failure to pay the outstanding contractual obligations due to Plaintiff. *See id.* ("The undisputed fact that the Conversion Defendants, as nonsignatories to the Credit Agreement unlawfully took control of the funds establishes actionable conduct beyond the contract.").

Accordingly, the Court recommends awarding $4,775,466.00 on Plaintiff's conversion claim against Mr. Golant.

## IV.  CONCLUSION

For the foregoing reasons, I respectfully recommend an entry of judgment awarding Plaintiff (1) $4,775,466.00 against Timeless, Mr. Blankschein, and Mr. Golant, jointly and severally;[8] (2) prejudgment interest at the rate of 2% per month on the $4,775,466.00 award against Timeless and Mr. Blankschein, commencing on May 4, 2017, jointly and severally; and (3) $92,967.67 in legal fees and expenses against Timeless and Mr. Blankschein, jointly and severally.

Plaintiff's counsel is directed to mail a copy of this Report and Recommendation to Defendants and file an Affidavit of Service by January 5, 2019.

## V.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for computing time). If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written

---

[8] Plaintiff is not entitled to a windfall against Defendants. Accordingly, to avoid a duplicative award, the Court recommends that the $4,775,466.00 awarded against Defendants should be joint and several.

objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy

Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street,

White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

       Requests for extensions of time to file objections must be made to the Honorable Cathy

Seibel and not to the undersigned.  Failure to file timely objections to this Report and

Recommendation will result in a waiver of objections and preclude later appellate review of any

order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b),

6(d), 72(b); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).


Dated:   December 28, 2018
        White Plains, New York


                                      **RESPECTFULLY SUBMITTED:**


                                        JUDITH C. McCARTHY
                                        United States Magistrate Judge